IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:21-cr-070 |
| | ) | |
| v. | ) | |
| | ) | |
| NICOLE POOLE FRANKLIN, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

## INTRODUCTION

On April 21, 2021, a two-count information was filed charging Nicole Poole Franklin with committing two violations of the federal hate crimes act on December 9, 2019, in violation of 18 U.S.C. § 249(a)(1)(B)(ii). Ms. Poole Franklin pled guilty to the charges that same date, and the Court formally accepted her plea on May 6, 2021. The plea agreement in the case calls for the government to recommend a sentence of 324 months of imprisonment, with Ms. Poole Franklin free to argue for any sentence allowed by law. The parties also jointly agreed that the sentence imposed should run concurrently with the sentence imposed in Polk County, Iowa case FECR334319, which is the relevant conduct from which the federal charges arise. The plea agreement contains stipulations related to the advisory sentencing guideline calculation, recommends full credit for acceptance of responsibility for the offenses, and that restitution may be imposed.

The presentence report drafter determined that Ms. Poole Franklin's base offense level under the advisory sentencing guidelines for the two counts is 33 and 35, due to the underlying offenses being attempted murder, and because serious injury was sustained by minor victim #2.

(PSR ¶¶42, 49). Because the offenses of convictions fall under the hate crime statute, three additional levels are applied to each offense group under USSG § 3A1.1(a). (PSR ¶¶44, 51). And, because both the minors were vulnerable victims, two additional levels were added to each group under USSG § 3A1.1(b)(1). (PSR ¶¶45, 52). The grouping rules of the advisory sentencing guidelines were then applied, resulting in a combined adjusted offense level of 42. (PSR ¶¶56–59). After applying a three-level reduction for acceptance of responsibility (PSR ¶¶ 61, 62), and calculating her criminal history category as IV (PSR ¶80), the presentence report drafter found a total offense level of 39, and an advisory sentencing guideline range of 360 months to life. (PSR ¶135). There are no advisory sentencing guideline issues requiring resolution. The ultimate question is what sentence is "sufficient, but not greater than necessary" in this case, pursuant to the factors in 18 U.S.C. § 3553(a), and Ms. Poole Franklin respectfully argues that the Court should accept the sentencing recommendation in the plea agreement and impose a sentence of no more than 324 months of imprisonment, to be served concurrently with the underlying state sentence in Polk County case FECR334319.

## ARGUMENT

Nicole Poole Franklin is forty-three years old, and has suffered from severe mental health problems throughout her entire life. Her mental state was first examined after she attempted suicide for the first time when she was around age twelve. (PSR ¶109). Since that time, she has been diagnosed with schizoaffective disorder (bipolar type),[1] depression, post-traumatic stress

---

[1] Schizoaffective Disorder, Bipolar Type, includes symptoms of schizophrenia along with episodes of mania and major depression. *See* Mayo Clinic, *Schizoaffective disorder*, (August 11, 2021, 12:40 PM), https://www.mayoclinic.org/diseases-conditions/schizoaffective-disorder/symptoms-causes/syc-20354504. It can lead to problems with impaired functioning, is characterized by delusions, hallucinations, incoherency, bizarre and unusual behavior, periods of mania and depression, problems managing personal care, and can lead to suicidal ideations and

2

disorder, and anxiety. *Id*. She has a long and documented history of wild fluctuations and extreme variations in her mental health condition, and her life has involved significant periods of extreme paranoia, hallucinations, delusional beliefs, and erratic behavior, all of which directly tracks with symptoms of schizoaffective disorder. (PSR ¶110). She also has struggled with sleep-related issues throughout her life that cannot be helpful to her mental conditions, beginning with sleepwalking as a child, and continuing with her current sleep apnea problem. (PSR ¶108). The inability to find and maintain access to psychiatric medications that work effectively for her has further contributed to a chaotic mental state and related actions throughout her life, as have the moments of her life where she struggled with post-partum depression, losing her parental rights, and self-isolating behaviors related to, and feeding back into her existing mental health problems. (PSR ¶110). She has received psychiatric care, including hospitalizations, at multiple times throughout her life. (PSR ¶109). She has been on psychiatric medications off-and-on throughout most of her adult life. *Id*. She has also exhibited psychotic symptoms in the past, like trouble concentrating and thinking clearly, delusions, agitation, insomnia, paranoia, disorganized behaviors, memory problems, racing thoughts, and dissociative symptoms including depersonalization and derealization from her own concept of self. (PSR ¶111).

While it is unclear where any genetic component of Ms. Poole Franklin's schizoaffective disorder may stem from (though her biological father and his unknown familial line are possibilities), she has had a plethora of environmental stressors throughout her life to exacerbate the condition. (PSR ¶98). The first known traumatic event occurred when she was only six years old, when her adopted grandfather molested her. (PSR ¶94). She did not disclose the abuse until

---

attempts. *Id*. The exact cause of the condition is unknown, but both genetics and stressful events may trigger symptoms, and using mind-altering drugs can amplify already present symptoms. *Id*.

she was twelve, which also correlates with her first suicide attempt. (PSR ¶¶94, 109). Her mother and stepfather had also divorced before the attempt, her mother had to work multiple jobs to support the family, and had to move the family regularly, all of which added to Ms. Poole's childhood stress and both contributed to, and exacerbated, her mental health problems. (PSR ¶94). Ms. Poole Franklin perceived her mother as having little time to devote to her emotional needs when she was a child, and saw her as instead spending her time and energy as a nurse helping others, which doubtlessly fed into the combination of teenage angst and burgeoning mental illness Ms. Poole Franklin was experiencing in her teen years. (PSR ¶¶94, 96). Ms. Poole Franklin soon began acting out and running away from home because of her home situation and her mental health problems. (PSR ¶94).

Further adding into the mix, at age of sixteen Ms. Poole began using intoxicants. This likely stemmed both from an unconscious effort to self-medicate her mental health problems and regulate her mood, and from the availability of intoxicants from the types of people with whom she was associating. She tried alcohol, marijuana, methamphetamine, and crack and powder cocaine, all beginning at age sixteen, and has also experimented with opiates and hallucinogens over the years. (PSR ¶¶113–117). She had dropped out of school by that point in her life, after her mother had moved to Nebraska and left her behind to attend school on her own with no adult supervision. (PSR ¶124). Marijuana became her drug of choice, and she built up to using up a quarter ounce of the drug per day before her arrest. (PSR ¶114). She has also sporadically used methamphetamine since age sixteen, with different phases of high and low use volume over the years. (PSR ¶116). In her current mental state, she is able to look back and recognize that her history of substance use has caused problems with her family relationships and her ability to stabilize her mental health conditions. *Id*.

As she entered adulthood, struggling with mental illness, substance use problems, unstable housing, and poverty, Ms. Poole Franklin began having problems with the law. She accrued simple misdemeanor theft offenses, for which she was fined and placed on probation for a few months between ages eighteen and twenty-one (PSR ¶66–68), but then was sent to prison in her mid-twenties after a first degree theft conviction and subsequent probation revocation. (PSR ¶69). Notably, her probation revocation was based on behaviors that continued to track with impulsive and manic schizoaffective episodes, like being an accessory to shoplifting, tampering with a witness, and misdemeanor escape from a residential facility. (PSR ¶¶70–72). Her subsequent parole term was likewise revoked when she left an inpatient treatment placement at Broadlawns Hospital without permission. (PSR ¶¶69, 109). She was able to successfully participate in vocational training, complete her general equivalency degree and some college courses through Des Moines Area Community College while incarcerated (PSR ¶122), which allowed her to release back into the community with more options than returning to the sporadic fast food and pet care services type of work she had previously pursued that sometimes left her reliant on family and romantic partners for financial support. (PSR ¶125).

In-between her initial probation revocation and subsequent parole revocation terms of imprisonment on the theft case, Ms. Poole Franklin had her first child. (PSR ¶104i). She also married a different man around that time, only to have her new husband die from amyotrophic lateral sclerosis (ALS) shortly after the wedding. (PSR ¶101). She eventually lost her rights to her child due to her erratic behaviors and use of methamphetamine, and now hears how her daughter is doing through reports relayed by her mother, because Ms. Poole Franklin is barred from contact with the child's father due to a no-contact order between them. (PSR ¶¶73, 104i).

She then began a relationship in 2013 that has continued to be "on and off" ever since, and while chaotic at times, has been supportive overall and remains so at the present. (PSR ¶103).

Ms. Poole Franklin then went several years before another bout of problems with the law, which began in 2016 with a conviction for operating a vehicle while intoxicated for which she was placed on probation. (PSR ¶74). She had quit her job by this point, due to feelings of burnout and because of a pay dispute. (PSR ¶124). While on probation, she was using marijuana and methamphetamine, drinking, and not attending treatment as directed, all of which further culminated in convictions for simple harassment and disorderly conduct for stabbing her paramour, and a resulting revocation of the probation term on the OWI. (PSR ¶¶74–77). She started a new relationship in 2018 that led to marriage in 2019, but she and her husband soon separated after an incident where she bit her husband, brandished a knife, and repeatedly said she would kill him (all of which her husband attributes to a mental health episode and medication problems). (PSR ¶¶88, 102). Ms. Poole Franklin was then fined for trespassing in 2018, after another bizarre incident where she entered a home while under the influence of methamphetamine, changed into clothing found therein, and then refused to leave until the police intervened. (PSR ¶77). She became pregnant for the second time around this time, and later suffered from post-partum depression after the birth of her second daughter, who was adopted by another couple. (PSR ¶¶104ii, 110). The interaction between Ms. Poole Franklin's severe mental health problems, unstable lifestyle, poverty, lack of access to needed help, and the exacerbation of her mental conditions when using intoxicants, are clearly apparent in her criminal history and the history of her life.

Furthermore, these factors are present in the events of this case as well. On December 9, 2019, Ms. Poole Franklin was cited for trespassing at a Sheraton Hotel, after she refused to

follow a request to leave the property, and instead waited in her car in the parking lot until the police arrived. (PSR ¶88a). Then, in the mid-afternoon that same day, Ms. Poole Franklin jumped the curb with her vehicle, struck twelve-year old minor victim #1, and drove away. (PSR ¶10). A few minutes later, she again drove up over the sidewalk and struck fourteen-year old minor victim #2 from behind while she was walking to school, before again driving onward. (PSR ¶11). The injuries to minor victim #2 resulted in a two-day hospital stay. *Id*. Ms. Poole Franklin was arrested for assault and operating while intoxicated around an hour later, at a gas station where she was shoplifting food that she was eating on site, and became distraught and began using racial epithets toward the clerk and other customers when she was confronted about her behavior. (PSR ¶¶13, 88b). She continued screaming racial epithets when police arrived, admitted smoking methamphetamine earlier in the day, exhibited signs of drug use, and continued eating the food she had taken from the gas station. (PSR ¶14). While in the police car, she remained agitated, chanted "white power," and periodically said words like "Nazis" and "white pride." *Id*.

Subsequent investigation of the hit and run accidents determined that Ms. Poole Franklin had been on the front porch of a nearby residence where she and her ex-husband had previously lived with their child, and investigators also later learned that Ms. Poole Franklin had lost the appeal regarding custody rights two weeks prior. (PSR ¶12). During a later post-*Miranda* interview with law enforcement officials on December 19, 2019, Ms. Poole Franklin said she went to the residence because her ex-husband and daughter lived there—a belief that was incorrect—but no one was home. (PSR ¶15). She further stated that she ran over minor victim #2 because she was Hispanic, and thought she was "takin' over . . . our homes, and our jobs." *Id*. She admitted that at the time she hit the victim, she intended to kill her with her car. *Id*. In a

phone call to her boyfriend soon thereafter, she discussed hitting minor victim #1 as well, because "he's just like ISIS" and she believed he was a "terrorist" who was "not supposed to be there and he's going to take me out." (PSR ¶16). When her boyfriend said she should not have mentioned minor victim #1 on the call, she said she brought it up because it is not okay to run a little boy over. *Id*.

Records from the time of her arrest further elucidate Ms. Poole Franklin's mental condition at the time she committed the offenses in this case. After her arrest, she was hyperverbal and having auditory hallucinations at the Polk County Jail. (PSR ¶109). She was quickly found to be mentally incompetent to stand trial due to her mental state, and was committed to the state Mental Health Classification Facility in Iowa City for further treatment. (PSR ¶109a)). Her competency was sufficiently restored a few months later for the state proceedings to continue. *Id*. She has been treated with various psychiatric medications since her arrest, including quetiapine, paroxetine, hydroxyzine, lithium, buspirone, and fluphenazine. (PSR ¶112). There can be no doubt that, while not legally insane at the time she committed the crimes in this case, Ms. Poole Franklin was in a chaotic and disjointed mental state, fueled by severe pre-existing mental illnesses that were exacerbated by methamphetamine use, numerous extremely difficult life events hitting at nearly the same time, and with some of the worst aspects of the culture acting behind the scenes and further poisoning her mental state.

After being restored to competency, Ms. Poole Franklin accepted responsibility for her offenses by entering into a global resolution on all the charges against her at both the state and federal levels. She signed a plea agreement to the state attempted murder charges on April 19, 2021, entered guilty pleas in the instant federal case on April 21, 2021, pursuant to the signed plea agreement, and then formally entered the guilty pleas in state court the next day. She was

sentenced to concurrent 25-year terms of imprisonment on the state charges on May 28, 2021. The only remaining question is now what sentence is "sufficient, but not greater than necessary" for Ms. Poole Franklin under 18 U.S.C. § 3553(a) for the federal aspect of the cases.

The parties' plea agreement effectively recommends that a sentence of not more than 324 months of imprisonment be imposed in the case, and explicitly recommends that the sentence should be served concurrently with the underlying and inextricably intertwined state case. The Court retains the discretion as to what term of imprisonment should ultimately be imposed pursuant to the sentencing factors in 18 U.S.C. § 3553(a). The plea recommendation gives Ms. Poole Franklin credit for her complete acceptance of responsibility in the case, and her willingness to resolve the federal case by information rather than indictment. She also resolved the federal case relatively quickly, as the state case was pushing toward resolution when the federal government indicated it intended to bring charges as well. Notably, Ms. Poole Franklin has been in state custody on the underlying and intertwined state charges since December 9, 2019, and the advisory sentencing guidelines direct that: "(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of time will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." USSG § 5G1.3(b)(1)–(2).

Aside from the legal considerations associated with the plea agreement and the sentencing guidelines the Court must consider when crafting and imposing the sentence in this case, there is no doubt that everything about this case is a tragedy. Two minor children were run over by Ms. Poole Franklin. They had done no wrong, and did not see her coming. Ms. Poole

Franklin is grateful that neither child was killed, and is deeply sorry for the pain that she caused them.  Being currently in a more stable mental state, she is also sorry for the psychological trauma her actions have caused them, has some insight into how difficult it is to live with such traumas, and knows how they can reverberate long after physical injuries have healed.  She also understands how the racial and ethnically charged statements she made at the time of her arrest and when discussing the motive for her actions have inflicted deep wounds on the children and their families, and regrets inflicting that pain.

However, as discussed above, there can be no doubt that much more was happening with Ms. Poole Franklin at the time of her offenses than an afternoon of actions driven solely by hate.  While she understood the nature and quality of what she was doing, and knew it was morally wrong, she was also quite clearly in the midst of an extreme schizoaffective episode that was further exacerbated by methamphetamine use, post-partum depression, and the grief of losing rights to her child.  All these things were just the latest traumatic events and stressors in a life that had been full of them already, and they all occurred during a backdrop when some of the worst aspects of society's racial and cultural conflicts and divides were frequent topics in the media and among the populace.  As stated above, a toxic combination of factors were at play on December 9, 2019, all of which were filtered through Ms. Poole Franklin's mental illnesses.  The worst symptoms of her schizoaffective disorder feed on and are exacerbated by these sorts of factors, and she is not well-equipped, either mentally or through her daily living situation, to successfully process and navigate her mental condition under such extreme circumstances.  The result was the events of December 9, 2019, and now Ms. Poole Franklin faces the consequences for her actions.

This is, by far, the most serious set of crimes Ms. Poole Franklin has ever committed. Her aforementioned criminal history correlates with mental illness, poverty, and substance use problems. While those are factors in the instant offense conduct as well, the seriousness of her offenses on December 9, 2019, are drastic outliers when compared to the rest of her criminal history. This further illustrates the degree of extreme mental impairment Ms. Poole Franklin was in on that day, and the resulting effect on her actions. This case demonstrates the difficulty for the legal system in navigating how to assess and impose degrees of culpability and punishment for an individual who was not legally insane at the time of the offense, but also clearly not a rational and fully functioning individual; the challenge of imposing sentence on a person who knew at a basic level what she was doing and that it was wrong, but the reasoning and motive for her actions borders on delusional.

Cases like this one make it difficult to assess what a "just punishment" is under 18 U.S.C. § 3553(a) that also "promotes respect for the law." Ms. Poole Franklin's offenses are very serious, because she hurt two innocent children and did so based on abhorrent beliefs that were running through her addled mind at the time. Nevertheless, she is also a tragic figure herself; she is a person suffering from extreme mental illness who has endured repeated traumatic events throughout her life. While there are legitimate concerns about protecting the public given the nature and circumstances of the offense, it is also clear that finding an effective treatment for Ms. Poole Franklin's schizoaffective disorder, keeping her off illegal drugs that exacerbate her condition, helping her process and deal with the traumas she has lived, and making sure she has a stable living environment, are all necessary components of preventing her from recidivating in any fashion in the future. There is no option except a lengthy prison sentence available in the aggregate in this case, and whatever sentence the Court imposes will provide both ample specific

and general deterrence to future criminal conduct, especially when considered as part of the twenty-five year sentence the state has already imposed on Ms. Poole Franklin. Prison is, at its core, simply the punishment for what Ms. Poole Franklin has done, and is not particularly well equipped to address her rehabilitative and correctional needs in the most effective manner. *See* 18 U.S.C. § 3582(a) (stating that "imprisonment is not an appropriate means of promoting correction and rehabilitation"). Ms. Poole Franklin hopes to receive mental health and substance abuse treatment within the prison system while she serves her sentence, but more resources exist outside the prison system to help her to the extent she needs to fully address her problems. While the Court must be cognizant of the need to avoid unwarranted sentencing disparities when crafting the sentence in this case, this is both an atypical case and an unusual and unique defendant, leaving the Court with few guideposts upon which to base or compare any disparity concerns.

The overarching question is what sentence is "sufficient, but not greater than necessary," given the nature and circumstances of this offense, Ms. Poole Franklin's personal history and characteristics, and the remaining factors of 18 U.S.C. § 3553(a) discussed above. Ms. Poole Franklin understands that she faces a significant sanction for her crimes, and accepts the judgment of the Court as to what the appropriate sanction must be. However, the advisory sentencing guidelines simply do not account for many of the factors unique to Ms. Poole Franklin's history and characteristics that played a role in the offenses in this case. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). It is left to the Court to weigh these factors in the

sentencing calculus under the § 3553(a) considerations for imposing sentence. Ms. Poole Franklin is deeply sorrowful for her actions, and the impact she has had on the victims, their families, and members of the community that feel the impact of her offenses. Regardless of what sentence the Court decides is "sufficient, but not greater than necessary" in this case, Ms. Poole Franklin intends to use her time in prison to work toward a better life in the future, and to do what she can to make amends.

Respectfully Submitted,

 */s/ Joseph D. Herrold*
Joseph D. Herrold
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: joe_herrold@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2021, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

 */s/ Morgan Conn*, Paralegal